IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| Abdul M. Suda, #312596, ) | |
| ) | |
| Petitioner, ) | Civil Action No. 3:09-1077-MBS-JRM |
| ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Warden Robert Stevenson, ) | |
| ) | |
| Respondent. ) | |
| _____) | |

Petitioner, Abdul M. Suda ("Suda"), is an inmate at the South Carolina Department of Corrections serving a sentence of twenty-five (25) years imprisonment for armed robbery. Suda filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 which was received by the Court on April 24, 2009. Respondent filed a return and motion for summary judgment on August 19, 2009. Because Suda is proceeding *pro se*, an order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) was issued on August 21, 2009 advising him of his responsibility to respond to the motion for summary judgment. Suda filed his response to the motion on October 15, 2009. Respondent filed a reply on October 26, 2009.

## BACKGROUND AND PROCEDURAL HISTORY

Suda robbed a convenience store in Berkeley County on July 23, 2003. He pled guilty on November 17, 2005. Suda was represented by David Schwacke, Esquire. There was no direct appeal.

1

Suda filed an application for post-conviction relief ("PCR") on March 1, 2006. (App. 30). An evidentiary hearing was held on May 29, 2007. Suda was represented by Conrad L. Falkiewicz, Esquire. Suda and Schwacke both testified. The PCR court entered an order of dismissal on September 10, 2007. A Johnson[1] petition for writ of certiorari was filed through the South Carolina Commission on Indigent Defense raising the following issue:

> Whether defense counsel was ineffective in advising petitioner that if he pled guilty he would receive a sentence of only 10 to 12 years?

Pursuant to state procedure, Suda presented other grounds of ineffective assistance of counsel as follows:

> Whether any of the following amounted to ineffective assistance of counsel, or otherwise rendered Petitioner's plea involuntary?
>
> 1. That the Petitioner's prior counsel failed to communicate with Petitioner the difference between a guilty plea and a plea bargain.
>
> 2. The Petitioner's prior counsel failed at the time of the guilty plea by not providing adequate information to the sentencing judge necessary for the judge to make a determination as to whether the plea was being entered in "knowing and voluntary" manner by the withholding of the reports and medical examinations relevant to the petitioner's ability to understand and communicate.
>
> 3. That the petitioner's difficulties with communication were noted by the sentencing judge but not acted upon to insure Petitioner's understanding of the process.
>
> 4. Petitioner's previous trial counsel failed to request a competency hearing even with medical reports which may, with further testing, have supported a competency defense.
>
> 5. That Petitioner's prior counsel failed to present the medical reports showing that the Petitioner suffered from blackouts due to a prior accident which during periods of time the petitioner experienced uncontrolled and unremembered behavior due to a possible neurological difficulty and condition in mitigation of sentencing.

---

[1] Johnson v. State, 364 S.E.2d 201 (S.C. 1988); *see also* Anders v. California, 386 U.S. 738 (1967).

6. That Petitioner's prior counsel failed to move for a continuance in the sentencing hearing after an extreme emotional outburst from other witnesses and parties in the courtroom, requiring the courtroom to be closed, to avoid any prejudice upon the Applicant.

The petition for writ of certiorari was denied by the South Carolina Supreme Court on December 17, 2008. The Remittitur was returned on January 5, 2009.

## **GROUNDS FOR RELIEF**

In his present petition, Suda asserts that he is entitled to a writ of habeas corpus on the following grounds:

**Ground One:** Ineffective assistance of counsel.

Supporting Facts: Counsel failed to communicate with the applicant the difference between a guilty plea and a plea bargain.

**Ground Two:** Ineffective assistance of counsel.

Supporting Facts: Counsel failed to provide adequate information to the sentencing judge necessary for the judge to determine whether the plea was being entered knowingly and voluntarily by withholding reports and medical examinations relevant to Petitioner's ability to understand and communicate.

**Ground Three:** Ineffective assistance of counsel.

Supporting Facts: Applicant's counsel failed to move for a continuance in the sentencing hearing after an extreme emotional outburst from one of the witnesses in the courtroom.

**Ground Four:** Ineffective assistance of counsel.

Supporting Facts: Defense counsel advised Petitioner that he would only receive 10 to 12 years if he plead guilty. Petitioner received 25.

# DISCUSSION

## Standard of Review

Since Suda filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. Lindh v. Murphy, 521 U.S. 320 (1997); Breard v. Pruett, 134 F.3d 615 (4th Cir.), *cert. denied,* 521 U.S. 371 (1998) and Green v. French, 143 F.3d 865 (4th Cir. 1998), *cert. denied*, 525 U.S. 1090 (1999). That statute now reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has addressed procedure under § 2254(d). *See* Williams v. Taylor, 529 U.S. 362 (2000). In considering a state court's interpretation of federal law, this court must separately analyze the "contrary to" and "unreasonable application" phrases of § 2254(d)(1).

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases .... A state- court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Court's] precedent.
>
> * * *
>
> [A] state-court decision involves an unreasonable application of [the Supreme] Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of [the] Court's precedent if the state court either

4

unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

*Id.* at 1519-20. Ultimately, a federal habeas court must determine whether "the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 1521.

Suda alleges that his plea attorney was ineffective. The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). In the case of Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel. A petitioner must first show that his counsel committed error. If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Turner v. Bass, 753 F.2d 342, 348 (4th Cir. 1985) quoting Strickland, *reversed on other grounds*, 476 U.S. 28 (1986). In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal. Strickland requires that:

> [T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
>
> * * *
>
> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. . . the court

5

> must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. (Emphasis added).

Strickland at 694-95.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal habeas court must determine whether the state court's decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The court's analysis should center on whether the state courts properly applied the Strickland test. *See* Williams v. Taylor, 529 U.S. 362 (2000). ("Strickland test provides sufficient guidance for resolving virtually all ineffective assistance of counsel claims.")

Ineffective assistance of counsel claims may be asserted in limited circumstances where the petitioner has entered a plea of guilty. A guilty plea generally precludes the petitioner from challenging defects in the process which occurred prior to the plea. He "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann." Tollett v. Henderson, 411 U.S. 258, 267 (1973). When such a claim is raised, the voluntariness issue is subsumed within the claim of effectiveness of the attorney's assistance. Hill v. Lockhart, 474 U.S. 52, 56 (1985).

In order to prevail on a claim of ineffective assistance of counsel pertaining to a guilty plea, a petitioner must show that his lawyer's performance was incompetent, i.e., the first prong of the Strickland test. Under this prong, counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. The prejudice prong of the Strickland test is modified and the petitioner must show "that there is a

6

reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

A criminal defendant must be informed of the direct consequences of his plea. Misinformation as to the direct consequences of a plea renders the plea involuntary. Manley v. U.S., 588 F.2d 79 (4th Cir. 1978) (erroneous statement of court as to maximum possible punishment). Neither the court nor defense counsel is obligated to advise a defendant as to the collateral consequences of a plea. Strader v. Garrison, 611 F.2d 61 (4th Cir. 1979) (parole eligibility is a collateral consequence of a plea). "The distinction between 'direct' and 'collateral' consequences of a plea...turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment." Cuthrell v. Director, Patuxent Institution, 475 F.2d 1364, 1366 (4th Cir. 1973).

**1. Plea Negotiation/Sentencing**

Suda asserts that his attorney was ineffective because he failed to inform him of the difference between guilty plea and a plea bargain (Ground 1) and that counsel told him that he would be sentenced to 10 to 12 years imprisonment (Ground 4).[2] The record reflects that Suda was facing a mandatory 10 year sentence with a maximum of 30 years. (App. 3). He was sentenced to 25 years.

At the hearing, Suda affirmed that he understood that he was pleading to a crime that required a minimum sentence of 10 years and a maximum of 30 years. (App. 3-4). The court inquired of Suda if he wanted to exercise his right to a trial by jury. (App. 5). Suda responded, "I was advised to take -

---

[2]Respondent argues that Ground 4 is procedurally barred because it was not specifically addressed by the PCR court. However, the undersigned concludes that this claim was addressed in the overall context of the PCR court's discussion of Suda's general claim of ineffective assistance of counsel.

7

take the - the plea bargain." (App. 6). The court then carefully explained that it was Suda's decision, and his alone, to plead guilty or proceed to trial. Suda responded, "I want to take my - my - my chance on the mercy of the court." (*Id.*). After Suda told the court what happened on the night of the robbery (app. 6-12), the following colloquy occurred:

**The Court:** All right. Now, has anybody promised you anything or threatened you in any way to get you to plead guilty to this charge?

**Mr. Suda:** No, Sir. I wanted - - -

**The Court:** All right. Beg pardon?

**Mr. Suda:** No, Sir.

**The Court:** All right. Nobody's put anything on this sentence sheet. Usually, if there's gonna be a recommendation or anything like that, they write on here what they want me to sentence you to. But, nobody's written anything on here suggesting any kind of sentence.

So they're gonna - I'm gonna listen to you - the rest of what you have to say, and what your lawyer has to say, what the state's lawyer has to say. And then I'm gonna make a decision about what I think the proper - proper sentence is.

It's gonna be at least ten years, because the law provides that. It can be up to thirty years. Do you understand that?

**Mr. Suda:** Yes, Sir. Can I say something?

**The Court:** Yes, Sir, You can - if you want.

**Mr. Suda:** Yes, Sir, I - -

**The Court:** I'm gonna give you a chance to say all you want to say a little bit later on.

**Mr. Suda:** Okay.

**The Court:** But I'm asking you now about the sentence. Has anybody - has anybody promised you anything or threatened you in any way to get you to plead guilty to this?

8

**Mr. Suda:** No, Sir.

**The Court:** All right. Basically, what I'm really getting at is about the sentence. Most of the time people will come back later on - a lot of times people will come back later on and say, Oh, no, my lawyer told me I was only gonna get five years or I was only gonna get ten years and that mean judge gave me thirty years.

I want to make sure nobody's told you anything or promised you anything about a sentence. Now, has anybody promised you anything about a sentence?

**Mr. Suda:** No, Sir.

(App. 13-14).

This record makes it abundantly clear that there was no plea bargain in the case and that the court had the discretion to sentence Suda from 10 years to 30 years. It is also clear that Suda understood the explanation of the court.

At the PCR hearing, and in the present petition, Suda appears to assert that his attorney was ineffective in some respect for not telling him the difference between pleading guilty and pleading guilty pursuant to a plea bargain. The PCR court rejected this claim finding the testimony of Suda's attorney to be credible. (App. 86). Counsel testified that:

> [Suda] was aware there was no plea bargain. He had asked on various times for me to try to negotiate. In fact, it got to the point where I did send a letter to Mr. Jennings, the deputy solicitor handling the case, if he would consider a ten-year minimum. He respectfully declined.
>
> Mr. Suda was aware that the mandatory minimum of this was ten, that it carried up to 30 and that whatever he had to do was 85 percent.

(App. 65).

Plea bargaining is a practice accepted in all courts. Blackledge v. Allison, 431 U.S. 63 (1977). The Supreme Court has recognized that it is "an essential component" of the criminal justice process.

9

Santobello v. New York, 404 U.S. 257, 260 (1971).  However, "there is no constitutional right to a plea bargain."  Weatherford v. Bursey, 429 U.S. 545, 560-561 (1977).  The decision to offer a defendant a plea bargain is a matter of prosecutorial discretion.  In other words, a defendant has no right to demand a plea bargain and the prosecutor has no legal obligation to consider or offer a plea bargain to a defendant.  *Id.* At 561.  If a plea bargain is made, principles of contract and agency are applied if the terms or content of the agreement becomes an issue.  United States v. McIntosh, 612 F.2d 835 (4th Cir. 1979).  A prosecutor's breach of a plea agreement may render a guilty plea involuntary.  Santobello, 404 U.S. at 262-263.

Counsel was not required to explain to Suda the difference between a guilty plea and a plea bargain.

Suda also claims that counsel promised him a sentence of 10 to 12 years.  The record cited above, including Suda's responses to the court contradict this claim.  The PCR court found counsel's testimony that Suda was aware there was not an agreement for any sentence and that Suda was aware of the sentencing range was credible. (App. 85-86).  The findings are supported by the record and entitled to deference.

**2. Medical Reports**

Suda was involved in a vehicular accident prior to the robbery.  He told his attorney that he suffered blackouts as a result of an injury he received from the accident.  Counsel retained a psychologist, Dr. Melekian, who evaluated Suda and referred him to a physician, Dr. Bachman, and an MRI was performed.  Suda asserts that counsel was ineffective for failing to present the reports

10

of the doctors to the court because they were relevant to his ability to understand and communicate.[3] This claim was rejected by the PCR court and raised in the appeal.[4]

The PCR court found that Suda had not shown that counsel was ineffective because he presented no records or testimony that would have shown he was unable to communicate or understand the proceedings. The court noted that the only evidence presented was that Dr. Bachman's record showed that the MRI results were "uncertain." The court found that the record showed that Suda "was able to communicate with the guilty plea judge" and "answered the trial judge's questions and answered the trial judge when asked about his involvement in these charges. (App. 87).

The findings of the PCR court was based on a reasonable determination of fact due to the lack of evidence presented by Suda.

**3. Continuance**

Suda asserts that his attorney was ineffective for failing to seek a continuance after an emotional outburst of a relative of the victim during the guilty plea. This issue was addressed by the PCR court and raised on appeal.[5]

During the factual presentation offered by the State, the Solicitor detailed the events inside

---

[3] Suda is a native of the Dominican Republic who is fluent in Spanish. English is his second language. The transcript of the guilty plea shows that Suda had some difficulty understanding and communicating. However, when viewed in its entirety, the transcript shows that Suda adequately responded to the court's questions and fully understood the process.

[4] In his Roseboro response, Suda argues that counsel was ineffective because no psychiatrist was employed to determine if he was competent at the time of the crime. Such a claim was not raised in state court and is barred.

[5] Suda asserts that he was denied due process because there was no continuance in his Roseboro brief. However, the due process argument was not raised in state court and is barred.

11

the convenience store. Suda forced the female clerk to disrobe and commit a sexual act on herself. (App. 15-16). The victim also spoke of this facet of the armed robbery. (App. 19). The victim's brother also spoke to the court. Apparently, he was unaware of the sexual aspects of the case until the hearing and became quite emotional. The record shows that his statement was interrupted for an off-the-record conference (App. 21), and a recess was taken (App. 22). Suda asserts that his attorney should have asked for a continuance.

The PCR court found that under South Carolina law the granting of a continuance is in the sound discretion of the court. (*See* State v. Colden, 372 S.C. 428, 641 S.E.2d 912 (2007)). The PCR court found that Suda had not shown that his attorney was deficient for failing to make a motion for a continuance, and even if he was deficient, Suda had not shown prejudice. (App. 91).

## **CONCLUSION**

The undersigned concludes that the state court's application of Strickland and Hill were not contrary to, or an unreasonable application of Supreme Court precedent. It is, therefore, recommended that Respondent's motion for summary judgment be **granted** and the petition **dismissed** without an evidentiary hearing.

```
                              _____
                              Joseph R. McCrorey
                              United States Magistrate Judge
```

November 12 , 2009
Columbia, South Carolina

**The parties are referred to the Notice Page attached hereto.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).